**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| NICOLE KATCHUR, | CIVIL ACTION |
| v. | |
| THOMAS JEFFERSON UNIVERSITY | NO. 18-3421 |

**MEMORANDUM RE: MOTION TO DISMISS**

Baylson, J.                                                                        January 18, 2019

## I.      Introduction

In this case, Plaintiff, Nicole Katchur, alleges that Defendant, Thomas Jefferson University, wrongfully denied her admission to medical school. Plaintiff alleges that Defendant's rejection of Plaintiff's medical school application constitutes discrimination on the basis of her race, gender, national origin, and ancestry; that Defendant created a hostile educational environment; and that Defendant rejected Plaintiff in retaliation after Plaintiff submitted a discrimination complaint. The First Amended Complaint ("Complaint") alleges four Counts:

1. **Count I**: Violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, by discriminating against Plaintiff on the basis of her race (Caucasian), sex (female), national origin (American), and ancestry (European); creating a hostile educational environment; and/or retaliating against Plaintiff for registering a complaint of discrimination.

2. **Count II**: Violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), by discriminating against Plaintiff on the basis of her sex (female), creating a hostile educational environment, and/or retaliating against Plaintiff for registering a complaint of discrimination.

3. **Count III**: Violation of 42 U.S.C. § 1981 by discriminating against Plaintiff on the basis of her race (Caucasian) and creating a hostile educational environment.

4. **Count IV**: Violation of 42 U.S.C. § 1981 by retaliating against Plaintiff for registering a complaint of race discrimination.

Presently before this Court is Defendant's Motion to Dismiss all Counts of the Complaint.

1

For the reasons discussed below, the Motion to Dismiss is granted in part and denied in part.

## II.      Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows.  Plaintiff is a twenty-two-year-old female who graduated from Princeton University in June 2017 with a Bachelor of Arts degree.  (ECF 8, First Am. Compl., "FAC" ¶ 7.)  She is a citizen of New Jersey and resides in Mullica Hill, New Jersey.  (Id. ¶ 3.)  Defendant is a non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania and, at all times relevant to this action, has maintained its place of business in Philadelphia, Pennsylvania.  (Id. ¶ 4.)

While Plaintiff attended Princeton, she aspired to pursue a career in medicine and majored in Neuroscience in furtherance of that goal.  (Id. ¶ 8.)  Plaintiff also held various jobs and participated in numerous extracurricular and volunteer activities.  (Id. ¶ 9.)  For example, Plaintiff served as a Math Teaching Assistant and Tutor, worked as a counselor at Stanford University during a summer vacation, organized an annual fashion show to raise awareness for Autism, volunteered at a local animal shelter, served as Princeton's Preview Host, and volunteered with United for Sight and PrinceTHON.  (Id. ¶ 10.)  Plaintiff also maintained high marks in her Neuroscience major.  (Id. ¶ 11.)  Plaintiff researched various medical schools and ultimately decided to pursue a career at Defendant's Sidney Kimmel Medical College ("Jefferson").  (Id. ¶ 12.)  Plaintiff scored in the 82nd percentile nationally on the Medical College Admission Test ("MCAT"), which was "well-within the range of those students previously admitted to Jefferson." (Id. ¶ 32.)

On or about August 10, 2016, Plaintiff learned that Defendant's Director of Admissions, Dr. Brooks, would be visiting Princeton's campus on August 11, 2016 to discuss Jefferson with prospective applicants.  (Id. ¶ 13.)  Plaintiff was excited to discover that she would be the only

student attending Dr. Brooks's presentation, so it would be a one-on-one meeting where she would have the opportunity to express her interest in Jefferson.  (Id. ¶ 14.)

On or about August 11, 2016, Plaintiff attended the meeting with Dr. Brooks.  (Id. ¶ 15.) Dr. Brooks immediately inquired into Plaintiff's ethnicity.  (Id. ¶ 16.)  After informing Dr. Brooks that she was Caucasian, Dr. Brooks asked if Plaintiff was sure and suggested that Plaintiff obtain an expensive genetic test to see if she could qualify as Native American or American Indian to garner better chances of being accepted to Jefferson.  (Id.)  Dr. Brooks informed Plaintiff that she advised a past Caucasian applicant to obtain a genetic test, that the applicant learned that he was partially African American, and that he was accepted into Jefferson on account of his race.  (Id. ¶ 17.)  Dr. Brooks also informed Plaintiff that she would gain admission to Jefferson in the incoming medical school class if she were African American, rather than Caucasian.  (Id. ¶ 18.)

Plaintiff attempted to steer the conversation to a more appropriate subject by asking about Jefferson's JeffHOPE program.  (Id. ¶ 19.)  In response, Dr. Brooks informed Plaintiff that she could get information about the program on Jefferson's website, and then proceeded to ask Plaintiff if she could give her "maternal advice" about how to "take her 'mess' and turn it into admission." (Id. at ¶¶ 19–20.)  Dr. Brooks insinuated that Plaintiff's "status" as a Caucasian, European, American was a "mess" incapable of admission to Jefferson.  (Id. ¶ 20.)

Plaintiff again tried to move the conversation away from her national origin, ancestry, and race, asking about Jefferson's mentorship programs for first-generation college students.  (Id. ¶ 21.)  Dr. Brooks responded, "Oh!  You are a first generation, that's why you're at Princeton," insinuating that Plaintiff's high SAT scores and status as Valedictorian of her high school would

not warrant admission to Princeton. (Id.)[1] When Dr. Brooks continued to assert that Plaintiff should attempt to discover if her family was somehow related to a minority group, Plaintiff again responded that she was a Caucasian, European, American who could not qualify as Native American or a member of any other minority group. (Id. ¶ 23.)

Lastly, Dr. Brooks suggested that Plaintiff pursue a Doctor of Osteopathic Medicine ("DO") instead of a Doctor of Medicine ("MD") degree, stating that a DO "is not bad unless you plan on marrying off and living in a foreign country." (Id. ¶ 24.) In response to this "sexist remark," Plaintiff stated that she aspired to pursue an MD, after which Dr. Brooks proposed that Plaintiff withdraw all of her applications to medical schools. (Id. ¶ 25.)[2] When Plaintiff stated that she did not intend to withdraw her applications, Dr. Brooks "abruptly" ended the meeting. (Id.)

On or about August 15, 2016, Plaintiff emailed Allison Smith, Princeton's Health Professions Advisor, to express her concern about Dr. Brooks's "discriminatory commentary." (Id. ¶ 26.) Plaintiff met with Ms. Smith to recount Dr. Brooks's remarks on or about August 17, 2016. (Id.) When Ms. Smith had not taken any steps to address Plaintiff's concerns, on August 20, 2016, Plaintiff contacted Michele Minter, Vice Provost of Equity at Princeton, to register another complaint. (Id. ¶ 27.) On or about August 23, 2016, Plaintiff met with Ms. Minter to discuss her meeting with Dr. Brooks. (Id. ¶ 28.) During that meeting, Ms. Minter told Plaintiff that she would not assist her further because Princeton did not want to "burn bridges" with Jefferson. (Id.) Finally, on or about August 27, 2016, Plaintiff emailed a detailed complaint to

---

[1] The Complaint does not contain any allegations regarding how Dr. Brooks would have known that Plaintiff was Valedictorian or had high SAT scores.
[2] The Complaint does not allege when Plaintiff applied to Jefferson, but the reasonable inference is that Plaintiff had submitted all of her applications, including to Jefferson, prior to the meeting with Dr. Brooks.

Clara Callahan, Jefferson's Dean of Students and Admissions, articulating the "discriminatory behavior" of Dr. Brooks.  (<u>Id.</u> ¶ 29.)  On November 28, 2016, Plaintiff received a rejection letter from Jefferson.  (<u>Id.</u> ¶ 30.)

## III.    Procedural History

Plaintiff filed the original Complaint in this case on August 13, 2018 (ECF 1).  On September 14, 2018, the parties stipulated that Defendant's time to file an answer, motion, or otherwise respond to the Complaint was extended to September 28, 2018 (ECF 6).  Defendant filed a Motion to Dismiss on September 28, 2018 (ECF 7).

Plaintiff filed the First Amended Complaint ("Complaint") on October 12, 2018 (ECF 8), after which the Court denied Defendant's Motion to Dismiss the original Complaint as moot (ECF 12).  Defendant filed a Motion to Dismiss the First Amended Complaint on October 15, 2018 (ECF 9, "MTD").  Plaintiff filed a Response on October 29, 2018 (ECF 10, "Resp."), and Defendant filed a Reply on November 5, 2018 (ECF 11, "Rep.").

## IV.    Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." <u>Warren Gen. Hosp. v. Amgen, Inc.</u>, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

The Court in <u>Iqbal</u> explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  <u>Iqbal</u>,

556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V. Discussion

### A. Parties' Contentions

#### i. Defendant's Motion to Dismiss

In the Motion to Dismiss, Defendant contends that the Complaint must be dismissed for the following reasons.

First, Defendant argues that Plaintiff's hostile educational environment claims under Title VI (Count I), Title IX (Count II), and Section 1981 (Count III) must be dismissed because Plaintiff was never a Jefferson student. (MTD at 5.) Defendant points out that there are no precedential judicial decisions suggesting that an applicant, as opposed to a student, can state a hostile educational environment claim. (Id.) Defendant recommends that the Court refer to Supreme Court precedent addressing hostile environment claims under Title VI for guidance, and notes that judges within the Third Circuit have applied such precedent to hostile environment claims under Title IX. (Id. at 5–7.) Similarly, Defendant recommends that the Court follow cases within and outside of the Third Circuit rejecting Title VII hostile work environment claims brought by applicants. (Id. at 7.)

Second, Defendant avers that Plaintiff's claims of discriminatory rejection pursuant to Title VI (Count I), Title IX (Count II), and Section 1981 (Count III) fail as a matter of law because the Complaint does not allege that Plaintiff was qualified for admission to Jefferson. (<u>Id.</u> at 9.) According to Defendant, Plaintiff's sole allegation that her MCAT Score "was well within the range of those students <u>previously admitted</u> to Jefferson" fails to demonstrate that Plaintiff's scores were within the range of students admitted to Jefferson in 2016, the year that Plaintiff applied. (<u>Id.</u> at 11–12) (quoting FAC ¶ 31).)

Third, Defendant contends that Plaintiff's retaliation claims under Title VI (Count I), Title IX (Count II), and Section 1981 (Count IV) must be dismissed because there is no causal connection between Plaintiff filing a discrimination complaint–the alleged protected activity–and the denial of her application to Jefferson, as the three-month gap between the two events is not sufficient to establish causation. (<u>Id.</u> at 12–14.)

Fourth, Defendant argues that Plaintiff's Title VI sex discrimination claim (Count I) must be dismissed because Title VI does not prohibit sex discrimination. (<u>Id.</u> at 15.) Defendant further avers that Plaintiff has failed to state a claim of national origin or ancestry discrimination under Title VI because the Complaint only alleges that Plaintiff "believes" that Jefferson's decision to deny her admission was based on her national origin and ancestry. (<u>Id.</u> at 15–16.) According to Defendant, Plaintiff must allege that similarly situated applicants outside of her protected class, such as non-Americans, were admitted to Jefferson in 2016, and Plaintiff fails to do so. (<u>Id.</u> at 16.)

Fifth, Plaintiff's Title IX claim (Count II) must be dismissed, Defendant argues, because the Complaint does not allege any facts demonstrating gender bias. (<u>Id.</u>) Rather, Defendant avers that the Complaint makes a conclusory allegation that Jefferson rejected Plaintiff's application because of her sex, relying only on Dr. Brooks's comment that Plaintiff should pursue a D.O.

unless she planned on "marrying off and living in a foreign country." (Id. at 17) (quoting FAC ¶ 23.) This comment, Defendant contends, could apply equally to men and women, and therefore, is insufficient to create an inference of discrimination. (MTD at 17–18.)

Finally, Defendant argues that Plaintiff's Section 1981 claims (Counts III and IV) must be dismissed because Plaintiff does not allege that she is a member of a racial minority, a necessary element of a Section 1981 claim. (Id. at 18–19.)

### ii. Plaintiff's Response to Defendant's Motion to Dismiss

In response, Plaintiff withdraws her claims for sex discrimination under Title VI (Count I) and Title IX (Count II). (Resp. at 1 n.1.)

Plaintiff then proceeds to argue that the hostile educational environment claims (Counts I, II, and III) should not be dismissed because there are no precedential decisions limiting such claims to students, as opposed to applicants like Plaintiff. (Id. at 6.) Plaintiff seeks to undermine Defendant's contention that Plaintiff cannot state a hostile educational environment claim because Dr. Brooks made the alleged statements took during a pre-application meeting analogous to a job fair. (Id. at 7.) Specifically, Plaintiff alleges that because Dr. Brooks harassed Plaintiff "at a sanctioned and official admissions interview," the harassment supports a hostile educational environment claim. (Id.)[3]

---

[3] This allegation appears to contradict the factual allegations in the Complaint. The Complaint does not describe Plaintiff's meeting with Dr. Brooks as an interview. Rather, the Complaint alleges that Dr. Brooks visited Princeton to meet with "prospective applicants," and that Plaintiff happened to be the only student attending. (FAC ¶¶ 13–14.) The Court must disregard this allegation, as the Third Circuit has instructed that a court may not consider additional or contradictory facts alleged in an opposition brief when deciding a motion to dismiss. See, e.g., Pa. ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (noting that legal theories in plaintiff's opposition brief may be considered "only to the extent that they find support in the allegations set forth in the complaint[]"); see also Kelly v. Bus. Info. Grp., Inc., No. 15-6668, 2017 WL 2720173, at *2 (E.D. Pa. June 22, 2017) (Strawbridge, M.J.) ("We do not consider additional facts asserted in an opposition to the motion to dismiss, as a brief is not a

Next, Plaintiff refutes Defendant's argument that Plaintiff's race, national origin, and ancestry discrimination claims under Title VI (Count I) and Section 1981 (Count III) must fail, arguing that the Complaint alleges that Plaintiff was qualified for admission to Jefferson. (Id. at 8–9.) According to Plaintiff, the Complaint clearly alleges that Dr. Brooks informed Plaintiff that she would be admitted to Jefferson if she were African American after reviewing Plaintiff's GPA and MCAT score. (Id.) (citing FAC ¶ 18.)[4] Plaintiff also specifically responds to Defendant's contention that Plaintiff cannot show that she was treated differently from similarly situated persons outside of her protected class. (Resp. at 9.) Though this is an element of a prima facie case, Plaintiff argues that a complaint need not establish a prima facie case to survive a motion to dismiss. (Id. at 10.) Moreover, Plaintiff avers that the prima facie case is irrelevant in this action because Plaintiff has shown direct evidence of discrimination; namely, that Dr. Brooks informed Plaintiff that if she were of a different race or ethnicity, she would be admitted. (Id. at 10–11.)

Plaintiff then argues that the Complaint states a claim for retaliation under Title VI (Count I), Title IX (Count II), and Section 1981 (Count IV) because Plaintiff engaged in a protected activity by reporting Dr. Brooks's discrimination to Jefferson, experienced a materially adverse action after the protected activity when Plaintiff was denied admission, and there was a causal link between the protected activity and the adverse action. (Id. at 11.) Plaintiff refutes Defendant's argument that a three-month time lapse is insufficient to establish causation, arguing that courts within the Third Circuit have declined to set a bright-line rule for temporal proximity. (Id. at 13.)

---

pleading under Fed. R. Civ. P. 7(a) and a plaintiff may not amend h[er] pleading through h[er] brief.").

[4] The Complaint does not allege that Dr. Brooks was aware of Plaintiff's GPA or MCAT score before she made this statement. (See FAC ¶ 18.) In fact, Plaintiff does not allege what her GPA was, and instead alleges that Plaintiff "maintained high marks" in her major. (Id. ¶ 11.) Accordingly, the Court must disregard this additional factual allegation in ruling on the Motion to Dismiss. See supra note 3.

Finally, Plaintiff contends that she can state a Section 1981 discrimination claim (Count III) even though she is not a racial minority, as the Supreme Court and the Third Circuit have allowed "reverse discrimination" claims to proceed under Section 1981. (Id. at 15–16.)

### iii. Defendant's Reply to Plaintiff's Response

In the Reply, Defendant reiterates that there is no authority to support Plaintiff's novel theory that an applicant for admission can state a hostile educational environment claim. (Rep. at 2.) Defendant then argues that Plaintiff's racial discrimination claims under Title VI (Count I) and Section 1981 (Count III) must be dismissed because the Complaint fails to allege that Plaintiff was qualified for admission to Jefferson in 2016 or that similarly situated applicants were admitted. (Id. at 4.) Defendant acknowledges that Section 1981 supports "reverse discrimination" claims. (Id. at 6 n.4). However, Defendant avers that Dr. Brooks's alleged statement that Plaintiff would be one of many hundreds of students admitted if she were African American does not support Plaintiff's Section 1981 or Title VI race discrimination claims. (Id. at 8.) Specifically, Defendant contends that this statement is not direct evidence of race discrimination because Dr. Brooks did not state that Plaintiff would not be admitted because of her race. (Id.) Further, Plaintiff's race discrimination claims must be dismissed, Defendant argues, because Plaintiff fails to allege that Dr. Brooks was involved in the decision to reject Plaintiff's application, or that there was a specific link between Dr. Brooks's comment and Plaintiff's rejection. (Id.) Similarly, Defendant argues that Dr. Brooks's statement is not direct evidence of national origin or ancestry discrimination under Title VI, setting forth nearly identical arguments. (Id. at 10.)

Lastly, Defendant again argues that Plaintiff's retaliation claims (Counts I, II, and IV) should be dismissed because the three-month time lapse between Plaintiff's discrimination

complaint and Defendant's rejection of Plaintiff's application, without additional facts, does not establish causation. (Id. at 11–14.)

### B. Analysis

#### i. Hostile Educational Environment Claims (Counts I, II, and III)

As noted above, Plaintiff alleges that Defendant created a hostile educational environment in violation of Title VI (Count I), Title IX (Count II), and Section 1981 (Count III). The Court concludes that because Plaintiff was not a student at Jefferson when the alleged harassment occurred, Plaintiff's hostile educational environment claims must fail.

To state a hostile educational environment claim under these statutes, a plaintiff must establish sexual or racial harassment "that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." Williams v. Pennridge Sch. Dist., No. 15-4163, 2018 WL 6413314, at *10 (E.D. Pa. Dec. 6, 2018) (Goldberg, J.) (quoting Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 651 (1999) (addressing hostile educational environment claims under Title IX))[5]; see also Ke v. Drexel Univ., No. 11-6708, 2015 WL 5316492, at *32 (E.D. Pa. Sept. 4, 2015) (Slomsky, J.), aff'd, 645 F. App'x 161 (3d Cir. 2016) (listing the elements of a hostile educational environment claim under Section 1981); Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 520 (3d Cir. 2011) (considering a Title VI hostile environment claim).

---

[5] Although Davis pertained to a sexual harassment claim in violation of Title IX, the Third Circuit has held that the "reasoning [of Davis] applies equally to harassment on the basis of the personal characteristics enumerated in Title VI and other relevant federal anti-discrimination statutes." Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 206 n.5 (3d Cir. 2001)).

In determining whether an educational environment is "hostile," "a court must examine the totality of circumstances, such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [a student's] performance.'" Ke, 2015 WL 5316492, at *32 (quoting Miller v. Thomas Jefferson Univ., 565 F. App'x 88, 93 (3d Cir. 2014)).  An isolated incident, unless extremely serious, is not sufficient to sustain a hostile educational environment claim.  Ke, 2015 WL 5316492, at *32; see also Castleberry v. STI Grp., 863 F.3d 259, 265 (3d Cir. 2017) (citation omitted) (holding that "an isolated incident of discrimination (if severe) can suffice to state a [hostile work environment] claim").  "[R]ather, the conduct must be sufficiently extreme that it amounts to a change in the terms and conditions of enrollment."  Ke, 2015 WL 5316492, at *32.

Defendant argues that Plaintiff cannot state a hostile educational environment claim under any statute because Plaintiff was not a student when she met with Dr. Brooks on August 11, 2016. (MTD at 5–8.)  The Court finds this argument persuasive.  As Plaintiff was not a Jefferson student at the time of the alleged harassment, she could not have been exposed to a hostile educational environment at Jefferson.  See Moore v. Pa. Dep't of Military & Veterans Affairs, 216 F. Supp. 2d 446, 449 (E.D. Pa. 2001) (DuBois, J.) (dismissing Title VII hostile work environment claim where the alleged harassment occurred during and after plaintiff's job interview, when plaintiff was not yet employed).[6]

---

[6] Though Moore involved a Title VII hostile work environment claim, judges within this district have considered decisions addressing hostile work environment claims in ruling on hostile educational environment claims.  See, e.g., Ke, 2015 WL 5316492, at *32 (citation omitted) (noting that "[t]he elements of [a] Section 1981 [hostile educational environment] claim are the same as the elements of a hostile work environment [claim] under Title VII").

Though Plaintiff contends that nothing in the seminal case of <u>Davis</u> explicitly restricts hostile environmental environment claims to "current students," Plaintiff fails to recognize that <u>Davis</u> is specifically applicable to harassment alleged by students. (<u>See</u> Resp. at 6–7.) In <u>Davis</u>, a parent, on behalf of a fifth-grade student, sued the school board and school officials for failing to remedy a classmate's sexual harassment of the student, which took place during school hours and on school grounds. 526 U.S. at 646. <u>Davis</u> held that Title IX prohibits student-on-student harassment if the harassment is so severe that it creates a hostile educational environment for the victim student. <u>Id.</u> at 633. <u>Davis</u> does not suggest that an individual may bring a hostile educational environment claim if she was not a student at the time of the alleged harassment. Whether a plaintiff is a current student of the defendant school when she files a hostile educational environment claim is irrelevant. <u>See</u> <u>Williams</u>, 2018 WL 6413314, at *6–9 (applying <u>Davis</u> in ruling on a motion for summary judgment on a hostile educational environment claim brought by a current college student, who was a high school student in defendant school district when the alleged harassment occurred).[7] Accordingly, Defendant's Motion to Dismiss Plaintiff's hostile educational environment claims in Counts I, II, and III will be granted with prejudice.

### ii. Discrimination Claims (Counts I and III)

Plaintiff brings discrimination claims under two statutes. Count I alleges discrimination on the basis of Plaintiff's race (Caucasian), national origin (American), and ancestry (European)

---

[7] The Court notes that Judge Goldberg, in a decision issued after the parties filed their briefs in this case, distinguished several of the cases cited by Plaintiff. <u>See</u> <u>Williams</u>, 2018 WL 6413314, at *12–13 (granting summary judgment on Title VI and Title IX hostile educational environment claims in favor of defendants, the school district and the high school's principals, where the plaintiff student received allegedly harassing telephone calls off of school grounds and outside of school hours).

under Title VI, and Count III alleges race discrimination under Section 1981 (Count III). The Court addresses each Count in turn.[8]

## 1. Title VI Claim (Count I)

Section 601 of Title VI provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). A violation of Title VI may be proven by direct or circumstantial evidence. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 275 (3d Cir. 2014).

Plaintiff contends that she has pleaded direct evidence of discrimination. Direct evidence of discrimination is "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on the plaintiff's race in reaching their decision to [reject] h[er]." Ke, 2015 WL 5316492, at *12 (quoting Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002)). In other words, direct evidence is "overt or explicit evidence which directly reflects discriminatory bias by a decision maker." Ke, 2015 WL 5316492, at *12 (citation omitted). "Where a plaintiff relies on comments made by the decision maker as direct evidence of discrimination," as is the case here, "it is vital that the statements relate to the decisional process." Id. at *16 (citation omitted).

The Court concludes that Plaintiff has sufficiently alleged direct evidence of racial discrimination. The alleged statement of Dr. Brooks, Jefferson's Director of Admissions, that

---

[8] Defendant notes in a footnote and reiterated at oral argument that it provided Plaintiff with computer print-outs showing that her application was "screened out by a computer, along with hundreds of other applications[,] due to her insufficient MCAT scores and GPA." (Rep. at 9 n.5.) Query whether, if true, this would negate any claim for damages, and whether Defendant's practices allowed for the discretionary admission of any students even if they were initially "screened out by a computer." The Court does not make any determinations at this stage.

Plaintiff would be granted admission to Jefferson if she were African American amounts to "overt or explicit evidence which directly reflects discriminatory bias by a decision maker." See id. at *12 (citation omitted). This statement pertained to the admissions process and was made in the context of a discussion about Plaintiff's race. Therefore, it may serve as direct evidence that Jefferson's Director of Admissions approached applications with discriminatory bias. See id. at *16. Although Plaintiff does not specifically allege that Dr. Brooks participated in Plaintiff's admissions decision, the Court may draw the reasonable inference that Dr. Brooks, as the Director or Admissions, was involved in reviewing Plaintiff's application for admission.

Even assuming that Dr. Brooks's statement is not direct evidence of discriminatory animus, Plaintiff has still stated a claim of discrimination under Title VI. In the absence of direct evidence of discrimination, a plaintiff can state a Title VI discrimination claim with circumstantial evidence under the McDonnell Douglas framework. Manning v. Temple Univ., No. Civ.A. 03-4012, 2004 WL 3019230, at *5 (E.D. Pa. Dec. 30, 2004) (Bartle, J.), aff'd, 157 F. App'x 509 (3d Cir. 2005). To establish a prima facie case of racial discrimination in an educational context under McDonnell Douglas, a plaintiff must demonstrate that:

> (1) [S]he is a member of a protected class; (2) she suffered an adverse action at the hands of the defendant[] in her pursuit of her education; (3) she was qualified to continue in her pursuit of her education; and (4) she was treated differently from similarly situated students who are not members of the protected class.

Manning, 2004 WL 3019230, at *5 (citation and internal quotation marks omitted); but see 157 F. App'x at 513 (noting that the Third Circuit has not extended the McDonnell Douglas prima facie test to the educational context). Though a plaintiff pleading discrimination need not meet the prima facie standard to survive dismissal, the complaint must contain sufficient factual allegations to raise a reasonable expectation that discovery will reveal the aforementioned elements. Medero

v. NBC Merchs., Inc., No. 16-6583, 2017 WL 3328361, at *4 (E.D. Pa. Aug. 3, 2017) (Baylson, J.) (citation omitted).

As detailed above, the parties do not dispute that Plaintiff is a member of a protected class. Though Plaintiff is Caucasian-American, the Supreme Court has held that Title VI supports "reverse discrimination" claims. See Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 283, 289–90 (1978). The parties also do not dispute that Plaintiff suffered an adverse action–her rejection from Jefferson. Rather, the parties dispute the second and fourth elements–whether the Complaint alleges sufficient facts demonstrating that Plaintiff was qualified for admission to Jefferson in 2016, the year Plaintiff applied, and whether Plaintiff plausibly alleged that she was treated differently from similarly situated applicants outside of Plaintiff's protected class.

With respect to the second element, Plaintiff contends that she was qualified because Dr. Brooks "expressly informed [her] that she would gain admission to Jefferson in the incoming medical school class if she w[ere] African-American, rather than Caucasian," and because Plaintiff's MCAT score was "well-within the range of those students previously admitted to Jefferson[.]" (FAC ¶¶ 18, 32.) Defendant argues that Dr. Brooks's statement does not demonstrate that Plaintiff was qualified for admission because the Complaint fails to allege that Dr. Brooks reviewed Plaintiff's application to Jefferson before making this statement. (Rep. at 5.) Further, Defendant contends that because Plaintiff only alleges that her MCAT score was within the range of those students previously admitted, Plaintiff fails to allege that was qualified for admission when she applied. (MTD at 11–12.)

The Court concludes that Plaintiff has plausibly alleged that she was qualified for admission to Jefferson. Defendant relies heavily on Manickavasagar v. Virginia Commonwealth University School of Medicine, 667 F. Supp. 2d 635 (E.D. Va. 2009), which outlines the traditional

16

deference afforded to academic admission decisions, particularly "in the health care field, [where] the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession[.]" Id. at 642–43 (quotation omitted). However, the plaintiff in Manickavasagar alleged that defendant medical school violated his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, not Title VI, as Plaintiff alleges in this case. Defendant has not cited any precedential judicial decisions suggesting that the "otherwise qualified" element of an ADA or Rehabilitation Act claim bears any similarity to a court's consideration of whether a plaintiff is qualified under Title VI.

The other cases Defendant cites are also factually distinct. For example, Defendant seeks to analogize this case to another case in this Circuit, Barnett v. Rutgers University, No. 17-2503, 2018 WL 1385664 (D.N.J. Mar. 16, 2018). In Barnett, plaintiff alleged that defendant violated the New Jersey Law Against Discrimination ("LAD") and the ADA by repeatedly denying her entry into Rutgers Medical School and a Rutgers PhD program even though she was qualified for both programs. Id. at *2. Plaintiff alleged that she was qualified for medical school because the Associate Dean informed her that she "ma[de] a compelling candidate for the program." Id. (citation omitted). Plaintiff alleged that she was qualified for admission into the PhD program because she successfully completed four graduate level courses during one semester with a 3.25 GPA. Id. The court dismissed plaintiff's LAD and ADA claims without prejudice because Plaintiff failed to plausibly plead that she was qualified for admission into either program. Id. at *8. The court explained that the complaint did not plausibly allege that the plaintiff ever applied to or was rejected from the programs, the admissions requirements for each program, or how plaintiff was in fact qualified. Id. at *8.

Not only is <u>Barnett</u> distinguishable from this case because <u>Barnett</u> determined whether the plaintiff was qualified under the ADA and New Jersey state law, not Title VI, but also because Plaintiff in this case has plausibly alleged that she was qualified for admission in 2016. Plaintiff does not allege the admissions requirements for Jefferson in 2016, as perhaps she does not know. Plaintiff also fails to allege when Plaintiff's 82nd percentile MCAT score was within the range of accepted applicants, or that her high marks in her major or her extracurricular activities warranted admission. However, Plaintiff alleges that Dr. Brooks expressly told her that she would be admitted if she were African American. (<u>See</u> FAC ¶ 18.) Accepting this factual allegation as true, as this Court must at this stage, the Court can reasonably infer that Plaintiff was qualified for admission to Jefferson.

Dr. Brooks's alleged statement also plausibly supports the fourth element of Plaintiff's Title VI race discrimination claim–that Plaintiff was treated differently from non-Caucasian, similarly situated applicants. Plaintiff's allegations that Dr. Brooks informed her that if she were African American, she would be accepted, and that Dr. Brooks recommended that Plaintiff invest in genetic testing to determine whether she was a member of a minority group to increase her chances of admission, raise the reasonable expectation that discovery will reveal that Plaintiff was rejected for admission because of her race. (<u>See</u> <u>id.</u> ¶¶ 18, 22.)

Therefore, the Court concludes that Plaintiff has stated a Title VI race discrimination claim. Though Defendant argues that Plaintiff cannot sustain a Title VI claim based on national origin/ancestry discrimination, Plaintiff has plausibly alleged facts that support a Title VI violation based on at least one protected class–race–sufficient to withstand the motion to dismiss stage. (<u>See</u> Rep. at 10–11.) As a result, Defendant's Motion to Dismiss Plaintiff's Title VI discrimination claim in Count I will be denied.

## 2. Section 1981 Claim (Count III)

To state a Section 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against her "because of race in the making, performance, enforcement, or termination of a contract or for such reason denied her the enjoyment of benefits, terms or conditions of the contractual relationship." Hitchens v. Cty. of Montgomery, No. 01-2564, 2002 WL 207180, at *5 (E.D. Pa. Feb. 11, 2002) (Hutton, J.) (quoting McBride v. Hosp. of the Univ. of Pa., No. 99-6501, 2001 WL 1132404, at *3 (E.D. Pa. Sept. 21, 2001) (Waldman, J.)). "[A] contract for educational services is a 'contract' for purposes of § 1981." Gratz v. Bollinger, 539 U.S. 244, 276 n.23 (2003) (citation omitted).

The Third Circuit has recognized that where a plaintiff is Caucasian, as is the case here, a suit asserting "reverse discrimination" under Section 1981 is viable even though the plaintiff is not a member of a racial minority. Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999). To make such a claim, a plaintiff must present sufficient allegations "to allow a reasonable fact finder to conclude (given the totality of circumstances) that the defendant treated plaintiff 'less favorably than others because of h[er] race.'" Coulton v. Univ. of Pa., 237 F. App'x 741, 747 (3d Cir. 2007) (quoting Iadimarco, 190 F.3d at 163). The Third Circuit has described Plaintiff's burden as "rather modest." Coulton, 237 F. App'x at 747 (quoting Marzono v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)).

The Court concludes that Plaintiff has stated a Section 1981 "reverse discrimination" claim. Dr. Brooks's alleged statement that Plaintiff would be admitted to Jefferson if she were African American, rather than Caucasian, demonstrates that Defendant treated some applicants, including Plaintiff, less favorably than others because of their race. Therefore, Defendant's Motion to Dismiss Plaintiff's Section 1981 race discrimination claim in Count III will be denied.

### iii. Retaliation Claims (Counts I, II, and IV)

Finally, Plaintiff alleges that Defendant rejected her application for admission in retaliation after Plaintiff filed a discrimination complaint against Dr. Brooks, in violation of Title VI (Count I), Title IX (Count II), and Section 1981 (Count IV).

As the same standard applies to retaliation claims under all three statutes, the Court addresses Plaintiff's claims together. Williams, 2016 WL 6432906, at *9 n.14. To establish a prima facie case of retaliation, "a plaintiff must show that: (1) she was engaging in a protected activity; (2) the funded entity subjected her to an adverse action after or contemporaneously with the protected activity; and (3) a causal link between the adverse action and the protected activity." Whitfield, 412 F. App'x at 522 (citation omitted) (elements of a Title VI retaliation claim); see also Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 564 (3d Cir. 2017) (same elements govern Title IX retaliation claims); Miller, 565 F. App'x at 91 (same elements in the Section 1981 retaliation context).

The parties do not dispute that the Complaint pleads sufficient facts to support the first two elements of a retaliation claim. First, Plaintiff plausibly alleges that she engaged in a protected activity when she emailed a discrimination complaint detailing Dr. Brooks's statements to Jefferson's Dean of Students and Admissions. See Ke, 645 F. App'x at 165 (noting that complaining about discrimination to a university is a protected activity); Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) (citation and internal quotation marks omitted) (stating that protected activities include "formal charges of discrimination as well as informal protests of discriminatory [] practices"); Tingley-Kelley v. Trustees of Univ. of Pa., 677 F. Supp. 2d 764, 781 (E.D. Pa. 2010) (Pratter, J.) (concluding that the plaintiff, an applicant for admission to defendant university's veterinary school, engaged in a protected activity when she

sent a letter to the school's dean requesting reconsideration of her application in part due to improper discussions during her interviews concerning her status as a mother of young children and a wife to a husband serving in the military).[9]

Second, Plaintiff has sufficiently alleged that she was subjected to an adverse action after or contemporaneously with the protected activity. Plaintiff alleges that she emailed Jefferson's Dean of Students and Admissions to report Dr. Brooks's discriminatory statements on August 27, 2016, and that Plaintiff was rejected from Jefferson on November 28, 2016. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (noting than an action is sufficiently adverse if it "might well have dissuaded a reasonable [person] from making or supporting a charge of [or complaint about] discrimination"); Tingley-Kelley, 677 F. Supp. 2d at 781 (concluding that the plaintiff's rejection from veterinary school was an adverse action for purposes of establishing a prima facie case of retaliation under Title IX).

---

[9]     The Court notes that although Plaintiff has withdrawn the Title IX sex discrimination claim, Plaintiff may still bring a Title IX retaliation claim. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 174 (2005) (holding that Title IX's private right of action includes a cause of action for retaliation because "retaliation is discrimination 'on the basis of sex[,]'" as "it is an intentional response to the nature of the complaint: an allegation of sex discrimination"); see also Williams, 2016 WL 6432906, at *9 (quoting Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006) ("[A] plaintiff does not need to 'prove the merits of the underlying discrimination complaint' but need only show a 'good faith, reasonable belief that a violation existed'" for purposes of establishing that the plaintiff engaged in a protected activity in the Title IX retaliation context)).

Here, the basis of Plaintiff's Title IX claims is Dr. Brooks's alleged "sexist remark" that Plaintiff should pursue a DO rather than an MD unless "[she] plan[ned] on marrying off and living in a foreign country." (FAC ¶¶ 24, 25.) This statement, as well as Dr. Brooks's alleged "discriminatory commentary" concerning Plaintiff's race and ethnicity, led Plaintiff to contact and meet with Princeton's Health Professions Advisor and Vice Provost of Equity before lodging a complaint with Jefferson. (Id. ¶¶ 26, 27, 28.) These factual allegations demonstrate that at the time Plaintiff emailed a discrimination complaint to Jefferson, she had a "good faith, reasonable belief" that a violation of Title IX existed. Accordingly, the Court considers Plaintiff's Title IX retaliation claim in ruling on the Motion to Dismiss.

The parties dispute the third element–whether there is a causal link between Plaintiff emailing a discrimination complaint to Jefferson's Dean of Students and Admissions on August 27, 2016, and Plaintiff's rejection from Jefferson on November 28, 2016.  The crux of Defendant's argument is that Plaintiff's retaliation claims should be dismissed because the three-month time lapse between the protected activity and Plaintiff's rejection is not sufficient to demonstrate causation.  (See MTD at 12–14; Rep. at 11–14.)

Defendant is correct that a gap of three months between a protected activity and an adverse action, without additional facts, does not establish a causal link.  See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation . . . ."); Lipschultz v. Holy Family Univ., No. 15-5760, 2017 WL 1331731, at *8 (E.D. Pa. Feb. 17, 2017) (Surrick, J.) ("While periods of days or weeks may be considered unusually suggestive, a period of many months is generally not.").[10]

The three-month time lapse between Plaintiff's discrimination complaint and her rejection from Jefferson is not unduly suggestive.  However, "the [c]ourt may consider 'a broad array of evidence,'" outside of temporal proximity to determine whether a causal relationship plausibly exists, including "ongoing antagonism or retaliatory animus, inconsistencies in the defendant's articulated reasons for taking the adverse action, or other evidence in the record sufficient to support the inference of retaliatory animus."  Davis v. Quaker Valley Sch. Dist., No.

_____

[10] Although the plaintiff in Lipschultz alleged retaliation under the Age Discrimination and Employment Act ("ADEA") and the Pennsylvania Human Rights Act ("PHRA"), the same framework applies to Plaintiff's retaliation claims in this case.  See Williams, 2016 WL 6432906, at *9 n.14 (citations omitted) ("Generally, the same standards apply to retaliation claims under Title VI, Title IX, Section 1981, . . . and the PHRA.").

13-1329, 2016 WL 912297, at *16 (W.D. Pa. Mar. 10, 2016) (citing <u>Farrell v. Planters</u> <u>Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000)); <u>see also</u> <u>Henderson v. Edens Corp.</u>, No. 09-1308, 2015 WL 4977189, at *9 (E.D. Pa. Aug. 20, 2015) (Baylson, J.)[11] (quoting <u>Williams v.</u> <u>Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004) ("Where . . . 'the temporal proximity is not so close as to be unduly suggestive, [the Third Circuit] has recognized that timing plus other evidence may be an appropriate test.'")). For example, a court may infer a causal connection if the adverse action occurs at the defendant's first opportunity to retaliate. <u>See</u> <u>Lipschultz</u>, 2017 WL 1331731, at *9 (concluding a that fourteen-month gap between a protected activity and plaintiff's termination did not preclude an inference of causation where the defendant waited until the first opportunity it had to retaliate against the plaintiff, and the defendant gave inconsistent reasons for plaintiff's termination).

Viewing the circumstances as a whole, the Court concludes that Plaintiff has failed to plead sufficient facts to support an inference of causation. Plaintiff's sole allegation is that Defendant received a rejection letter from Jefferson three months after Plaintiff emailed a detailed complaint articulating Dr. Brooks's discriminatory behavior to Jefferson's Dean of Students and Admissions. (<u>See</u> FAC ¶¶ 29–30.) As the temporal proximity between the protected activity and the adverse action is not unduly suggestive, Plaintiff must allege additional facts to support an inference of causation, and Plaintiff has failed to do so. <u>See</u> <u>Henderson</u>, 2015

---

[11] Though this Court considered an ADA retaliation claim in <u>Henderson</u>, the same framework generally governs retaliation claims under Title VI, Title IX, and Section 1981. <u>See, e.g.</u>, <u>Krouse</u> <u>v. Am. Sterilizer Co.</u>, 126 F.3d 494, 500 (3d Cir. 1997) (identifying the third element of a prima facie case of ADA retaliation as "a causal connection between the . . . protected activity and the . . . adverse action"); <u>see also</u> <u>Whitfield</u>, 412 F. App'x at 522 (noting that to establish retaliation under Title VI, the third element that a plaintiff must show is "a causal link between the adverse action and the protected activity"); <u>Castleberry</u>, 863 F.3d at 267 (same in the Section 1981 retaliation context); <u>Doe</u>, 860 F.3d at 564 (same in Title IX retaliation cases).

WL 4977189, at *9 (granting motion to dismiss retaliation claim where the plaintiff failed to allege any facts to support a causal connection between the resolution of his EEOC complaint and his wage increase over six months later).

Though Plaintiff argues that Defendant did not have an opportunity to retaliate against Plaintiff until reviewing Plaintiff's application for admission, the Complaint does not allege when Plaintiff submitted her application or that her application could not have been rejected until November 2016.  In other words, the facts as alleged do not support a logical inference that Defendant's first opportunity to retaliate against Plaintiff was three months after Plaintiff submitted a discrimination complaint to Jefferson.  Cf. Lipschultz, 2017 WL 1331731, at *9 (concluding that the defendant's first opportunity to retaliate against the plaintiff was fourteen months after the plaintiff's state court discrimination lawsuit, when the defendant had fulfilled its requirements under the parties' settlement agreement).

Further, Dr. Brooks allegedly suggested to Plaintiff in their meeting, before Plaintiff filed a discrimination complaint, that Plaintiff would not be admitted to Jefferson because of her race and/or national origin, raising a logical inference that Defendant decided to reject Plaintiff before Plaintiff engaged in a protected activity.  (See FAC ¶¶ 19–20.)  As a result, the Court will grant Defendant's Motion to Dismiss Plaintiff's retaliation claims in Counts I, II, and IV without prejudice, and with leave to amend.

**VI.    Conclusion**

Defendant's Motion to Dismiss will be denied in part and granted in part.  Defendant's Motion to Dismiss will be denied as to Plaintiff's race discrimination claims under Title VI (Count I) and Section 1981 (Count III).  The motion will be granted with prejudice as to Plaintiff's hostile educational environment claims (Counts I, II, and III) and Plaintiff's Title VI and Title IX sex

discrimination claims (Counts I and II).  The motion will be granted without prejudice, and with leave to amend, as to Plaintiff's retaliation claims under Title VI (Count I), Title IX (Count II), and Section 1981 (Count IV).

An appropriate Order follows.

O:\CIVIL 18\18-3421 Katchur v Thomas Jefferson Univ\18cv3241 Memo re MTD.docx